**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

AMERICAN SHRIMP PROCESSORS ASSOCIATION

Plaintiff,

v.

UNITED STATES,

Defendant,

and

PT BAHARI MAKMUR SEJATI,

Defendant-Intervenor.

**PUBLIC VERSION**

Ct. No. 25-00027

Business Proprietary Information
Removed from Single Brackets [ ]

**PLAINTIFF'S REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S SUPPLEMENTAL BRIEFS**

Roger B. Schagrin
Elizabeth J. Drake
William A. Fennell
Alessandra A. Palazzolo
SCHAGRIN ASSOCIATES
900 Seventh St. N.W., Suite 500
Washington, D.C. 20001
(202) 223-1700

*Counsel to American Shrimp Processors Association*

October 27, 2026

Table of Contents

I. Introduction .......... 1

II. Commerce Cannot Support its Acceptance of BMS's Costs .......... 1

III. BMS'S Arguments Do Not Demonstrate that Its Cost Allocations Were Reasonable .......... 2

A. Inaccurate Costs Adjusted with a Percentage Variance Remain Inaccurate .......... 3

B. Data that Identifies the Minimum Size of Shrimp Necessary to Produce a Particular Product Does Not Tell You Much It Cost to Produce the Product. .......... 5

C. BMS Is the Party Ignoring Reality .......... 6

IV. Commerce Cannot Rely on BMS's *Post Hoc* Rationales .......... 6

Table of Authorities

**Cases**

*Ad Hoc Shrimp Trade Enforcement Committee v. United States,* 578 F.Supp.3d 1310 (Ct. Int'l Trade 2022) ..... 8
*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ..... 2
*Nippon Steel Corporation v. United States*, 732 F.Supp.3d 1353 (Ct. Int'l Trade 2024) ..... 8
*Tabor v. Joint Bd. for Enrollment of Actuaries,* 566 F.2d 705 (D.C.Cir.1977) ..... 7
*The Timken Company v. United States*, 894 F.2d 385 (Fed. Cir. 1990) ..... 7
*Tianjin Magnesium Int'l Co. v. United States*, 34 CIT 980, 722 F.Supp.2d 1322 (2010) ..... 2
*Ultratec, Inc. v. CaptionCall, LLC, 872 F.3d 1267 (Fed. Cir. 2017)* ..... 8
*Wind Tower Trade Coalition, v. United States*, 810 F.Supp.3d 1351 (Ct. Int'l Trade 2025) ..... 8

**Statutes**

19 U.S.C. § 1677b(f)(1) ..... 2
19 U.S.C. § 1677b(f)(1)(A) ..... 3
19 U.S.C.§ 1677b(f)(1)(A) ..... 5

**Administrative Determinations**

*Certain Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea: Notice of Final Results of the Sixteenth Administrative Review,* 76 Fed. Reg. 15,291 (Dep't Commerce Mar. 21, 2011) ..... 4
*Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from Indonesia*, 63 Fed. Reg. 72268 (Dep't Commerce Dec. 31, 1998) ..... 5

## I. Introduction

Plaintiff, the American Shrimp Processors Association ("ASPA" or "Plaintiff") herein replies to the supplemental briefs of Defendant United States ("Commerce") and Defendant-Intervenor PT Bahari Makmur Sejati ("BMS") filed on September 18, ECF Nos. 60 and 58, respectively referred to hereinafter as "*Commerce Supp.*" and "*BMS Supp.*" This reply was authorized by the Court's Order of September 29, 2026 allowing additional briefing, ECF No. 63. ASPA's position continues to be that the acceptance by the United States Department of Commerce ("Commerce") of BMS's cost reporting, including its use of the costs of the smallest and least-expensive size of shrimp to report those costs, was not supported by substantial evidence. ASPA has articulated its position in its Revised Motion for Judgment on the Agency Record, ECF No. 54 ("*ASPA Motion*") and its Revised Reply Brief, ECF No. 56 ("*ASPA Reply*"). ASPA here provides specific responses to the arguments presented by Commerce and BMS in their supplemental briefs.

## II. Commerce Cannot Support its Acceptance of BMS's Costs

In its supplemental brief, Commerce attempts to support the position that its acceptance of BMS's costs was reasonable on the grounds that BMS did not have a standard cost system and so had to "work backwards to determine the quantities of actual raw shrimp that {went} into each final product." *Commerce Supp.* at 8. This falls short (as do Commerce's arguments in its briefs) of explaining why the results reasonably represent the costs incurred by BMS to produce its products. As ASPA reviewed in its Reply Brief, if (1) a respondent reports its costs using the least expensive input and (2) the respondent states that it didn't in fact use only that size to produce its product, it necessarily follows that the respondent must have used some larger, more expensive shrimp to produce those products. *See ASPA Reply* at 4-5.

Commerce has not explained why this is reasonable. It concludes that the mismatch between purchased and consumed shrimp inputs "is adequately explained." *Commerce Supp.* at 8-9. BMS's explanation of its process does not show that its cost reporting conforms to the requirements of the law for representative costs per 19 U.S.C. § 1677b(f)(1). As ASPA noted in its original motion, Commerce has failed to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tianjin Magnesium Int'l Co. v. United States*, 34 CIT 980, 982, 722 F. Supp. 2d 1322, 1328 (2010) (*quoting Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). This Court should reject Commerce's unsupported conclusions.

**III. BMS'S Arguments Do Not Demonstrate that Its Cost Allocations Were Reasonable**

BMS begins its response by arguing that "ASPA abandoned its argument that BMS manipulated its costs by allocating costs away from certain products and by over-reporting the costs to other products." *BMS Supp.* at 2, following a citation to *ASPA Motion* at 13.

BMS asserts that ASPA abandoned this argument when it advanced the argument in its Reply Brief that "by selecting target product sizes that were at the 'top end' of its count size ranges, which are at the lowest end of the actual sizes, BMS has allocated the lowest possible shrimp costs to its products." *BMS Supp.* at 2. ASPA's argument was made in response to BMS's assertion in its response brief that by selecting "top end" sizes, it was not allocating costs away from some products and over-allocating costs to others. *See ASPA Reply* at 10-11. As ASPA explained, the "top end" sizes were the smallest and thus the least expensive so that BMS's assertion confirmed ASPA's position. Because the assigned count size was the smallest and least expensive, BMS would necessarily have had to use larger and more expensive shrimp to produce its products. What is the effect of assigning the lowest costs to a product when more

expensive costs have necessarily been incurred? The respondent has <u>moved actual costs away</u> from those products.

The remainder of BMS's response consists of attempts to demonstrate that it actually didn't assign the lowest possible costs to its product. ASPA reviews each.

### A. Inaccurate Costs Adjusted with a Percentage Variance Remain Inaccurate.

BMS's primary argument is that because it applied a variance to its "standard" costs, any inaccuracy resulting from the fact that every "standard" cost was as low as it could possibly be disappeared. *See BMS Supp.* at 4-8. BMS also asserts that the fact that it had to apply a variance of only 3.34% to its reported costs meant that its costs were reasonable and accurate. *BMS Supp.* at 10-11. In so arguing, BMS ignores the requirement of the statute that the costs that Commerce relies on to determine dumping "reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A). If a set of costs begin as inaccurate, multiplying each cost by a single percentage variance does not increase their accuracy. The characterization of BMS's costs as "standard" costs that have been adjusted by a variance to actual costs is not accurate because (1) the so-called "standard" cost is not an estimate of a likely cost but the lowest possible cost for shrimp inputs big enough to produce the desired final product and (2) [ ] of BMS's production was made using shrimp inputs that had sizes and costs different from the "standard" sizes and costs.

As discussed in ASPA's brief, BMS identified a quantity of [ ] kilograms of shrimp with a "target" count size of [ ] while purchasing [ ] kilograms with that size. *See ASPA Motion* at 14. This is only one of the products that ASPA included in the exhibit to its cost case brief. In fact, ASPA showed that of the total of [ ] kilograms of POI shrimp production that BMS reported, it assigned costs to [ ] kilograms that were "standard" (*i.e.*, minimum) for shrimp that <u>it had not actually purchased</u>. *Petitioner's Cost Case Brief* at Exhibit

1a (Sept. 16, 2024) (*see* total lines in columns 6 ("Sum of H/O RM (kg)") and 9 ("D-14 > D-12 (kgs)"), C.R. 405. An excerpt of this exhibit was included as page 12 to *ASPA's Motion.* As the cost case brief exhibit shows, BMS assigned count sizes to determine costs for production of the [ ] kilograms in Exhibit D-14 that it didn't show purchasing in its list of POR purchases in Exhibit D-12. In other words, BMS calculated costs for over [74%] of its POR production using the prices of raw shrimp that it didn't purchase during the POR.

Applying a variance that ensures total costs that approximate total actual costs doesn't make the "standard" costs it has assigned to those [ ] kilograms accurate. In fact, BMS reported purchases in Exhibit D-12 of [ ] kilograms of raw shrimp with count sizes and purchase prices different from those it used to calculate costs in Exhibit D-14 as shown in the total line of column 10 of Exhibit 1a ("D-12 > D-14 (kgs)"). This is the sum of countsize quantities that were reported as purchased in Exhibit D-12 but not reported as used for production in Exhibit D-14. These inputs were the raw shrimp actually used to produce BMS's products, not those with BMS's "standard" sizes and costs.

In another proceeding, Commerce has explained the standard cost and variance reporting relied on by a respondent:

> POSCO sets standard costs as a means to estimate production costs associated with individual products and later determines actual costs and calculates the variances. Then, it will adjust those standard costs for the next period, based on a combination of prior actual experience and anticipated changes. The revised standard costs become the basis for calculating manufacturing variances in the next period.

*Certain Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea: Notice of Final Results of the Sixteenth Administrative Review,* 76 Fed. Reg. 15,291 (Dep't Commerce Mar. 21, 2011) and accompanying Issues and Decision Memorandum ("*Carbon Steel Products*

*IDM*") at 29 (note that in the cited proceeding, while not altering this general description, Commerce does modify the respondent's reporting to adjust for a more accurate variance).

As Commerce has described the reporting of standard costs in the *Carbon Steel Products* review, standard costs are estimates of likely costs that are adjusted with variances based on actual costs. In our case, BMS's "standard" costs cannot be described as estimates of actual costs because they are, in fact, values that necessarily underestimate actual costs and are different from [ ] of BMS's reported costs. Moreover, the increase of the cost of each product by a set percentage will not make the cost a reasonable measure of the cost actually incurred to produce the product.

Commerce has explained:

> The fact that the inaccurate standards for each major cost element add up to a total that is closer to the actual total costs does not support the claim that individual standard costs are reliable. The issue here is the allocation of costs between products or, in other words, the reliability of the standards, not the inclusion of total costs.

*Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from Indonesia*, 63 Fed. Reg. 72,268, 72,276 (Dep't Commerce Dec. 31, 1998). BMS's application of "standard" count sizes to shrimp representing [ ] of its production that had different sizes and costs has not been corrected by the use of a single percentage variance.

**B. Data that Identifies the Minimum Size of Shrimp Necessary to Produce a Particular Product Does Not Tell You Much It Cost to Produce the Product.**

BMS also argues that its reported costs are consistent with the statutory requirements for the costs that Commerce uses because it has relied on its historical production records to assign shrimp sizes and so acts consistently with the provision of 19 U.S.C.§ 1677b(f)(1)(A) specifying that costs shall "normally be calculated based on the records of the exporter or producer of the merchandise." *BMS Supp.* at 9-10. The records that BMS relied on identify the minimum size

shrimp that can be used to produce its products. They do not specify the costs of producing those products. As noted above, during the POR BMS identified a quantity of [ ] kilograms of shrimp with a "target" count size of [ ] while purchasing [ ] kilograms with that size. *See ASPA Motion* at 14. Given this data, how does the identification of "target" or "standard" shrimp sizes help you to determine the actual costs of producing all [ ] kilograms of products?

**C. BMS Is the Party Ignoring Reality.**

Finally, BMS argues that ASPA misunderstands "what count sizes mean in the commercial world." *BMS Supp*. at 12. BMS gives the example of how, "{i}f the target size of a 31/40 count size product is 39," this target can be met if half of the shrimp in the bag are in the middle of the 31/40 range (*i.e.*, size 36-37) and half of the shrimp are smaller than the designated 31/40 range (*i.e.*, size 41-42), as long as it averages out to 39. *Id.* BMS even asserts that the minimum input size it has identified is a "mid-point" in the sizes that can be included in a bag. *Id.* at 13. This belies commercial and, possibly, regulatory reality. Are bags of shrimp for sale in the grocery store marked "Contains 100 shrimp whose cumulative count size is 4000 so that their average size is 40" or are they marked "31-40 count size"? The latter is the case, of course. Moreover, there is no evidence in the record to support BMS's argument. There is no specific evidence that small shrimp were sold as large shrimp, nor is there evidence of any sorting done by BMS to ensure that varied sizes in a bag add up to provide a total that meets the advertised shrimp size. The Court should reject this argument out of hand.

**IV. Commerce Cannot Rely on BMS's *Post Hoc* Rationales**

ASPA has demonstrated that BMS's arguments do not establish that its cost reporting provided reasonable costs for its production. Even if they did, a number of these arguments constitute *post hoc* rationales for Commerce's acceptance of its costs. Commerce did not find

that any inaccuracies in BMS's product-specific cost were corrected by its application of a variance. Commerce did not find that the size of BMS's percentage variance demonstrated that its costs were accurate. Commerce certainly didn't find that customers for BMS's products would accept mixes of products smaller than the reported finished product count sizes along with products with larger count sizes.

The Federal Circuit has rejected arguments first made during judicial review. *The Timken Company v. United States*, 894 F.2d 385, 39-40 (Fed. Cir. 1990), c*iting Tabor v. Joint Bd. for Enrollment of Actuaries,* 566 F.2d 705, 709–710 (D.C.Cir.1977) ("{A}gency action cannot be sustained on post hoc rationalizations supplied during judicial review.") (*citing S.E.C. v. Chenery*, 318 U.S. 80, 94, (1942) (Agency action "cannot be upheld merely because findings might have been made and considerations disclosed which would justify its order.")).

This Court has agreed: a "court will uphold an agency action when the explanation is of less-than-ideal clarity; however, the explanation must come from the agency, not counsel's *post hoc* rationalization of agency action." *Ad Hoc Shrimp Trade Enforcement Committee v. United States,* 578 F.Supp.3d 1310, 1320 (Ct. Int'l Trade 2022), *citing Ultratec, Inc. v. CaptionCall, LLC, 872 F.3d 1267, 1274 (Fed. Cir. 2017). See also Wind Tower Trade Coalition, v. United States*, 810 F.Supp.3d 1351, 1359 (Ct. Int'l Trade 2025) ("This presents a *post hoc* rationalization by agency counsel, and not the reasoning of the agency itself.") and *Nippon Steel Corporation v. United States*, 732 F.Supp.3d 1353, 1369 (Ct. Int'l Trade 2024) ("One *post hoc* rationalization is just as useless as another.")

Rather than accept any of the *post-hoc* rationales in support of its cost reporting, this Court should remand this action to Commerce for reconsideration of its reliance on BMS's reported costs.

ASPA appreciates the opportunity to provide the Court with our views on these issues.

Respectfully submitted,

/s/_William Fennell____________________
Roger B. Schagrin
Elizabeth J. Drake
William A. Fennell
Alessandra A. Palazzolo
SCHAGRIN ASSOCIATES
900 Seventh St. N.W., Suite 500
Washington, D.C. 20001
(202) 223-1700

*Counsel to American Shrimp Processors Association*